Hagarty, Acting P. J.
(dissenting in part). Late in the evening of the 25th day of September, 1942, a tractor with trailer attached, owned by plaintiff A. Cimpi Express Lines, Inc., hereinafter referred to as Cimpi, Inc., and operated by its employee, struck a horse-drawn hay wagon on which there were riding a number of high school children. The accident occurred on Route 17, in this State, about two miles west of Goshen. Numerous children were injured and six of them were killed. Twenty-five of the children, or their representatives, commenced actions against Cimpi, Inc., and recovered judgments against it in the aggregate sum of $157,072.63.
Cimpi, Inc., was named as insured in two liability policies, one issued by American Fidelity and Casualty Co., Incorporated, hereinafter referred to as American, and the other by appellant, hereinafter referred to as the defendant. Defendant refused to undertake the defense in the actions or accept responsibility to pay the judgments; or any part of them, on the ground that its policy did not cover this liability of Cimpi, Inc. Thereupon, American and Cimpi, Inc., joined as plaintiffs in an action against defendant, which resulted in one of the two judgments appealed from, declaring Cimpi, Inc., to be entitled to full coverage and benefit. In addition, the twenty-five judgment creditors of Cimpi, Inc., invoking paragraph (b)- of subdivision 1 of section 167 of the Insurance Law, sought recovery in multiple actions against defendant on the policy. All of these actions against the defendant were brought on together for trial, in accordance with a stipulation of the parties, who also entered into another stipulation to the effect that the final judgment rendered in the action by Cimpi, Inc., and American against the defendant, and in a designated action by the representative of the estate of one of the deceased children against *1055 defendant, which two actions are here considered, should apply to all the actions' as if the record on appeal, included the judgment roll in each of the actions.
The policy written by defendant took effect on the 26th of October, 1941, and covered a period of one year, with limits of $50,000 for each person and $100,000 for each accident. The named insured were William P. Biss and Bloch and Guggenheimer, Incorporated. The policy contained two contracts, which may be characterized as general insurance and required insurance. The general insurance provisions, insofar as material, insured a specific autocar tractor and a specific highway trailer during the course of operation, generally, within three hundred miles of Port Byron, New York. By virtue of a general provision, as modified by a so-called “hired automobile” indorsement, there was no coverage if, at the time of the accident, either the specifically described tractor or trailer was being used in conjunction with a tractor or trailer owned by a named assured which was not covered by like insurance issued by defendant.
The required insurance was issued in conformity with article 3-B of the Public Service Law, and the pertinent rules and regulations of the Public Service Commission, hereinafter referred to as the Commission. Biss was a common carrier by motor vehicle to whom the Commission, on the 8th day of October, 1940, had issued certificate of public convenience and necessity No. 2806. “No common carrier by motor vehicle shall engage in the transportation of property on any public highway in this state unless there is in force with respect to such carrier * * * ” such certificate issued by the Commission (Public Service Law, § 63-k). “ No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the commission shall prescribe governing * * • policies of insurance * * * in such reasonable amount as the commission may require, conditioned to pay within the amount of such * * * policies of insurance * * * any final judgment recovered against such motor carrier for bodily injuries or death .resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit * • (Public Service Law, § 63-r. Emphasis supplied.)
Accordingly, the Commission promulgated rules which, as of the date of the accident on September 25, 1942, required such carriers to maintain insurance, in lieu of optional substitutes, for the payment of all judgments for personal injuries to the extent of minimum limits of- $5,000 to $10,000. These rules, in setting forth a form of indorsement to be attached to the policy itself by an insurer and a certificate to be filed by the insurer with the Commission, fixed the nature and extent of the coverage. The form of indorsement, known as form 6, contains provisions to the effect that the insurer had issued a policy which, by attachment of the indorsement, has been amended to provide the coverage or security under certificate of public convenience and necessity issued to the insured by the Commission regardless of whether such motor vehicles are specifically described in the policy or not, and liability extends to all losses within the boundaries of this State. Such indorsement, containing the names of. those insured, namely, “ William P. Biss and Bloch and Guggenheimer, Incorporated,” was attached to the policy issued by defendant.
The operations of Biss as a motor carrier consisted almost exclusively of hauling for Bloch and Guggenheimer, Incorporated, between Port Byron and Seneca Castle and New York City.
Defendant, in conjunction with furnishing this required insurance by attaching the form 6 to the policy, filed with the Commission on the 9th day of *1056 October, 1941, the certificate, known as form 4, certifying that it had issued such required'insurance to Biss and Bloch and Guggenheimer, Incorporated.
The required insurance, then, as distinguished from the general insurance, insured those named in forms 6 and 4, with respect to the operation of motor vehicles, whether or not described in the policy, pursuant to certificate No. 2806, within this State.
On the 8th day of May, 1942, Biss sold his autocar tractor and highway trailer and, subject to approval of the Commission, his public service rights, to Cimpi, Inc. This was an outright sale of the only trailer and tractor owned by Biss, who thereafter had nothing further to do with this or any other vehicle or operation as motor carrier. He retired to a farm.
, As of the time of this sale by Biss to Cimpi, Inc., the latter was an established common carrier. The Commission had issued certificate No. 2848 .to one Anthony Cimpi on the-19th day of December, 1940, as motor carrier for the transportation of numerous commodities throughout a large portion of the State. On the 9th day of July, 1942, or two months after the sale by Biss to Cimpi, Inc., certificate No. 2848 was transferred by order of the Commission from • Anthony Cimpi to Cimpi, Inc. Anthony Cimpi is ' the president of Cimpi, Inc. The required insurance in conjunction with certificate No. 2848 had "been issued by American by virtue of a policy of insurance, to which form 6 had been attached, which had taken effect on the 22d day of January, 1042, and ran for one year therefrom. This was a fleet policy. The American policy insured both Anthony Cimpi and Cimpi, Inc. It provided, in consideration of a premium, computed on gross receipts, for coverage of all equipment owned and hired by the assureds, it being agreed that the insurer be furnished at the close of each calendar month with a list of all vehicles in use. American had filed the standard form of certificate, form 4, with the Commission on behalf of Anthony Cimpi, on the 3d day- of February, 1942. It did not file form 4 on behalf of Cimpi, Inc., until the 17th day of October, 1942, or after the accident on the 25th day of September, 1942, but this delay is immaterial. It is undisputed that as of the time of the sale by Biss to Cimpi, Inc,, American had issued to Cimpi) Inc., the required insurance, so that Cimpi, Inc., might operate under certificate No. 2848. Cimpi, Inc., had also received a certificate from the Interstate Commerce Commission and, by the same policy issued -in January of 1942, American had furnished the required insurance with respect to this Interstate Commerce Commission certificate, and, on the 25th day of April, 1942, had filed a requisite certificate with the Interstate Commerce Commission on behalf of Cimpi, Inc.
In brief, as of the time Cimpi, Inc., purchased the tractor and trailer from Biss, Cimpi, Inc., or its predecessor, Anthony Cimpi, was operating as motor carrier both in intrastate and interstate commerce and under certificates entirely separate from the one under which Biss had been operating, with the requisite insurance having been issued by American under those separate certificates.
After the sale by Biss to Cimpi, Inc., the name of Cimpi, Inc., was added as an insured on the policy of insurance issued by defendant originally to Biss and Bloch and Guggenheimer, Incorporated. This was brought about by an indorsement dated the 12th day of May, 1942. It is the addition of the name of Cimpi, Inc., to the policy issued by defendant which has given rise to the present controversy and poses a question as to the nature and extent of coverage afforded Cimpi, Inc., by reason of its inclusion as a named insured.
! The general insurance provisions of the policy issued by defendant did not •over the accident because, eoncededly, the unit involved consisted of a Brockway *1057 tractor (not described in the policy) attached to the Highway trailer (described in the policy). The Brockway tractor, which was owned by Cimpi, Inc., and had been for some time prior to the accident, was not insured by defendant and, in consequence, there was no coverage under the general insurance. Nor, with respect to the required insurance, was Cimpi, Inc., operating at the time of the accident under certificate No. 2806, the certificate under which Biss had operated. After the sale by Biss on the 8th day of May, 1942, and on the 27th day of May, 1942, Biss and Cimpi, Inc., joined in petitioning the Commission to transfer certificate No. 2806 and operating rights thereunder from Biss to Cimpi, Inc. Instead of granting this request, the Commission, by order made the 21st day of July, 1942, directed Biss immediately to cease operations and notified him that a hearing would be held on the 6th day of August, 1942, for the purpose of determining evidence of cargo insurance or revocation of the certificate. Thereafter, and after a hearing on the 6th day of August, 1942, the Commission made an order on the 10th day of September, 1942, suspending certificate No. 2806. (See Public Service Law, § 63-q.) It was not until the 6th day of November, 1942, or after the accident on the 25th day of September, 1942, that the Commission made an order rescinding the suspension order of the 10th day of September, 1942, and approving the transfer of certificate No. 2806 from Biss to Cimpi, Inc.
Accordingly, the tractor and trailer belonging to Cimpi, Inc., on the 25th day of September, 1942, insofar as concerns intrastate commerce, could have been operated only under certificate No. 2848.
The respondents, in final analysis, are required to argue, as in effect they do, that, by reason of the inclusion of the name of Cimpi, Inc., as an assured on the policy issued by defendant, the defendant, under the standard form of indorsement, form 6, undertook not only to insure the specific truck and tractor under the general insurance and the operations of any of the assureds as a carrier under certificate No. 2806, but also the operations of Cimpi, Inc., under certificate No. 2848.
The policy of insurance and attendant circumstances, insofar as proved on the trial, conclusively show to the contrary. Cimpi, Inc., operating under certificate No. 2848, with required insurance thereunder furnished by American, admittedly owned, prior to any acquisition from Biss, eight tractors and eight trailers. • If the contention of respondents be. upheld, it follows that all of these, and as many more as Cimpi, Inc., might chose to operate under certificate No. 2848, were insured under the policy issued by defendant. The name of Cimpi, Inc., was added as an assured without exaction of any added premium. An officer of defendant testified, without dispute, “ There is no charge if the hazard remains the same and the risk remains the same and you are only adding an additional insured on the policy. The ownership is changed.” The premium for this policy was $765.93 for bodily injury liability. It is undisputed that, if defendant were to cover the eight tractors and trailers belonging to Cimpi, Inc., the additional premium for the period between the 12th day of May, 1942, and the 26th day of October, 1942, would have amounted approximately to $4,500. Defendant never filed any certificate, form 4, on behalf of Cimpi, Inc., nor is there any proof that Cimpi, Inc., ever requested that this be done.
The contention of respondents that the addition of the name of Cimpi, Inc., as an assured resulting in coverage of all of its trucks and tractors operating under certificate No. 2848, has some plausibility only because of the abstract *1058 nature of the form of indorsement required by the Commission to be attached to a policy. The general language of forms 4 and 6 must be considered, however, in the light of the provisions of the Public Service Law above referred to (§§ 63-k, 63-r), which comprehend the issuance of'insurance in conjunction with each certificate issued by the Commission. It is clear that the required insurance, accomplished by attaching form 6 to the policy, was issued to cover only the operations of a carrier under certificate No. 2806. Before the policy could be said to cover the operations of Cimpi, Inc., under certificate No. 2848, it would have to include a new indorsement, or form 6, expressly insuring such carrier upon notice and request of a proposed insured to the insurer for such insurance.
I concur for affirmance of the order but dissent from the judgment of affirmance about to be rendered and vote to reverse the judgments on the law and the facts, with costs, and to dismiss the complaints, on the law, with costs.
Carswell, Johnston and Nolan, JJ., concur in decision; Hagarty, Acting P. J., concurs as to affirmance of the order, but otherwise dissents and votes to reverse the judgments on the law and the facts and to dismiss the complaints on the law, with opinion, in which Adel, J., concurs.
Judgments, and order denying appellant’s motion to compel plaintiffs American Fidelity and Casualty Co., Incorporated, and A. Cimpi Express Lines, Inc., to enter judgment in their action, and granting the cross motion of American Fidelity and Casualty Co., Incorporated, for leave to discontinue, affirmed, with costs. No opinion.